# PETITION OF ALMER HUNT et al.

## APPLICATION OF M. J. BLACK, No. 5 of

## PETITION, TO FIRST REGISTER LAND.

## SUPERIOR COURT, COUNTY OF LOS ANGELES.

( Los Angeles Torrens Title Case )

March 6th, 1924.

---

In the matter of the Petition of Almer Hunt, et al. Application of M. J. Black, No. 5 of the petition to first register land. Application dismissed.

---

1. ADVERSE POSSESSION — EVIDENCE — HELD INSUFFICIENT TO SHOW FIVE YEARS.

Evidence held not to show the five years actual adverse possession necessary for applicant to first register title under the Land Title Law.

2. RECORDS — REQUIREMENTS — ADVERSE POSESSION STATUTE EXCEPTION.

The exception to Land Title Law, Sec. 8 providing that no title derived through sale for any tax or assessment shall be first registered unless applicant or those through whom he claims title have been in actual exclusive and adverse possession under such title at least five successive years, but that the same shall not apply to any title derived through sale by the state for taxes and held by the state for the period provided by law, is not satisfied by sale for taxes to the state and waiting five years since title remains in taxpayer subject to state's lien for such period and applicant must, in such cases, prove five years actual adverse possession in view of Pol. Code sections 3717, 3718, 3764, 3778, 3785 and 3788.

3. STATUTES — CONSTRUCTION — EXCEPTIONS — GIVING ALL PARTS MEANING.

The exception in Land Title Law Sec. 8 requiring actual adverse possession for five years for first title registration excepting land titles derived from sale of lands by the state which lands have been "sold by the state for taxes and held by the state for the period provided by law" should be construed to mean state owned lands sold on partial payments, taxes on which have become delinquent so that all such sections may have some meaning.

Ira F. Thompson, Judge.

In the Superior Court of the State of California

In and for the County of Los Angeles.

In the Matter of the Petition of Almer Hunt, et al., Application of M. J. Black, No. 5 of the Petition.    L. R. 407

The above entitled matter was regularly referred by this Court to Arthur P. Will, Referee, and said Arthur P. Will heretofore filed his report herein, in which among other things, it is stated that petitioner "bought the property in July, 1914, at a tax sale and received a deed from the tax collector. Since that time, that is to say for more than five years, he has paid the taxes. The property is vacant; neither the petitioner nor any tenant of his has lived on the property. To satisfy the requirements of possession Black testifies that during the five years following July, 1914, he was on the property a number of times, that at various times he picked fruit from the trees thereon, and it is in evidence that he, or some one acting for him, trimmed the trees and cut out the suckers. Further, in 1914 Black put up a 'for sale' sign on the property, referring inquiries to himself, which sign was knocked down several times during the years that followed, and re-erected until finally, in January, 1919, Black visited the property, found the sign down and took it away. During all this time the property was not fenced."

The report of the Referee also shows: "It is clear, therefore, that the petitioner has not brought himself within the requirements of Section 8 of the Land Title Law, which requires, in cases such as this, actual adverse possession for five years.

"The exception in said section refers to state-owned lands which have been sold on partial payment contract, the taxes on which become delinquent before

the contract price is fully paid, and as to which the procedure provided in Sections 3785 and 3788 of the Political Code may be followed.

That cases such as this fall within the prohibition and not within the exception of said Section 8 is manifest from the consideration that neither the title nor the property is held by the State when land is automatically sold to it for delinquent taxes, except in the case of the class of lands referred to in the last paragraph above. During the five year period, 'the legal title to the property continues in the taxpayer, subject to the lien in favor of the state created by the assessment and levy'. Crocker v. Scott, 149 Cal., 575 596.

"I find that the petitioner, Black, has not shown a compliance with the requirements which the Land Title Law, approved by the people of the State on November 3, 1914, makes a prerequisite to registration of title."

The reference made in the report of the Referee is to Sec. 8 of the Land Title Law, as follows:

"Sec. 8. No title derived through sale for any tax or assessment shall be entitled to be first registered, unless it shall appear to the satisfaction of the court upon the hearing of the application that the applicant or those through whom he claims title, have been in the actual, exclusive and adverse possession of the land under such title at least five successive years and have paid all taxes and assessments legally levied thereon during said period. But the foregoing shall not apply to any title derived through sale by the State of California of any property which has been sold by the State for taxes and held by the state for the period provided by law."

It is contended by applicant in this instance, as well as by applicants in several other petitions on file, that after a sale of a property for taxes to the state, and lapse of the necessary five years from that time to the

sale by the state to the individual bidder, meets the requirements of the section.    And in fact, in re Cox, et al., 41 Cal. App., 717, it was held that such a title was entitled to registration.

That opinion however, was written upon an appeal wherein there was not only no contest, but where, on account of the peculiar circumstances of the situation, the attention of the Appellate Court was not called to the case cited by the Referee herein, nor to similar provisions in other laws, nor to the reason for the insertion of the section in the law.    Only the position of the applicant in that case, without opposition, was before the Court.

The section here in question is entitled to serious consideration, for two reasons:    First,    because the people of the state particularly those who have registered their titles and built up the assurance fund, are entitled to every protection; and secondly, because, if such a title is to be registered, all tax titles from the state are entitled to be registered.

A hasty glance at the last portion of Sec. 8. to-wit, "But the foregoing shall not apply to any title derived through sale by the State of California of any property which has been sold by the state for taxes and held by the state for the period provided by law," would seem to indicate that the title acquired under such tax deeds could be registered.    Reading such an intent into the law, however, would nullify the provisions of the section, to all intents and purposes, for the reason that practically all sales for taxes are made by the state after the lapse of five years.

In the case of Crocker vs. Scott, 149 Cal, 575, which was a case wherein the plaintiff sought to enjoin the sale to the state on the ground that the tax levy was illegal, and that said sale would cloud the title of the plaintiff, the Court says:

"Under our present system the only cloud upon the title of the taxpayer created prior to the execution of

such a deed to the state is such a cloud as arises from the fact that the taxes are a lien upon his property in favor of the state, attaching as of the first Monday of March (the date of the assessment) and continuing until the taxes are paid or the property sold for the payment of the tax. (Political Code, Secs. 3716, 3717, 3718.)

"The effect of this lien is in no degree practically added to by anything required to be done by the tax collector prior to the execution of the deed. To comply with the laws of the state looking to the enforcement of unpaid taxes, the tax collector is required to make publication of the entire delinquent list within a certain period, together with a notice that at a stated time, the property upon which the lien of the state exists will, by operation of law, be sold to the state, and at the time stated, do declare all such' property, as to which the taxes have not been paid, sold to the state, to make an entry accordingly upon the delinquent list, and to make out and file of record a Certificate of such sale. (Political Code, Secs. 3764 to 3778.)

"The only practical effect of a compliance with these provisions, in addition to preserving the rights of the state IN THE MATTER OF SUCH TAXES AS ARE ULTIMATELY FOUND TO BE VALID, is to start running the period of five years within which redemption can be effected and at the expiration of which a deed may be issued to the state. During this period THE LEGAL TITLE TO THE PROPERTY CONTINUES IN THE TAX PAYER, subject to the lien in favor of the state created by the assessment and levy. Neither the certificate of sale (See Clarke v. Mead, 102 Cal. 516; 36 Pac., 862) nor any of these acts of the tax collector constitute even prima facie evidence as to the validity of the assessment or levy, and the taxpayer has a full and complete protection against the creation of any cloud upon his title in the enjoining of the execution of the deed."

It would seem apparent, therefore, that if the state does not hold the title, but only a lien, during the five year period, even the requirements of the last sentence in Section 8 cannot be met.

Section 8 is not peculiar to the law of California. In Colorado and Washington we find provisions to the effect that a tax title cannot be registered unless a decree of Court finding title valid as alleged is first obtained; or, if the land be vacant, payment of the taxes for eight years.    In Illinois and Oregon we find a provision that a petitioner must have the actual, undisputed possession for a period of ten years, and must have paid taxes for seven years of that period. In Minnesota we find that in order to register a tax title a petitioner must obtain a decree of Court establishing the validity of the tax title, or must have held adverse possession for the period of fifteen years. It is worthy of consideration that in three states, at least, provision is made that a tax title shall not be registered until a decree of Court is obtained establishing the validity of the tax deed.    In fact, in Illinois we find that the record owner—that is as distinguished from the holder of the tax title—may register his title upon proper proof, if he does equity by reimbursing the holder of the tax deed for the amount expended by the latter.

Gage v. Consumers Electric Light Co., 194 Ill., 30; Tobias v. Kaspzyh, 274 Ill., 80.

(In the last case cited registration was ordered without such reimbursement, because the holder of the tax deed failed to make proper showing of amount paid out by him.)

In the case of Partenfelder v. People 211 N. Y., 355, it was held that the object of the law is to register good titles, not to cure bad ones.

It would therefore seem to be the intent of the law to require five years actual adverse possession, or a period of time sufficient to bar the claim of any re-

cord owner, before the title is entitled to be registered. In fact this would seem to be the more certain when we consider that an adjudication refusing registration does not necessarily mean that the petitioner does not own the land, but simply that he has failed to meet the requirements of the Land Title Law.

On the other hand, if we construe the last portion of Section 8, to-wit, the exception, to refer to state owned lands , (school lands for example) which have been sold on partial payment contracts, the taxes on which have become delinquent, then all of Section 8 has some meaning. The first provisions of the section refer to tax deeds such as the tax deed in question, and such titles are not entitled to registration unless the holder of the tax title can prove adverse possession, and the exception refers to state-owned lands. This method of construction is the only one which gives effect to all of the language of Section 8, and is therefore, I believe, the one to be adopted.

Therefore the judgment in this case is that Application No. 5 of the Petition to register be dismissed.

Ira F. Thompson, Judge.